ISHEE, J., for the Court.
¶ 1. Earnest Lee Wilson, Jr., was convicted in the Circuit Court of Rankin County of embezzlement. The circuit court sentenced Wilson as a habitual offender to ten years in the custody of the Mississippi Department of Corrections and ordered him to pay a fíne of $10,000. Aggrieved by his conviction and sentence, Wilson now appeals. He asserts the following four points of error:
I.The indictment did not state an essential element of the crime of embezzlement.
II. Permitting Tammie Griffin, Crystal Chambers, and LaTonia Brunston to testify violated Rules 403 and 404(b) of the Mississippi Rules of Evidence.
III. The circuit court’s questioning of Wilson during the sentencing phase of the trial violated Wilson’s right against self-incrimination and his right to due process.
IV. The circuit court erred in denying Wilson’s motion for a directed verdict, his motion for a judgment notwithstanding the verdict, and his motion for a new trial.
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Shortly after midnight on November 5, 2005, Wilson entered a Texaco gas station in Brandon, Mississippi, at which Melanie Anderson was working as a cashier. Anderson noticed a for sale sign on Wilson’s car and told him that it was a nice car. Anderson said that she was looking for a sport utility vehicle, in particular a black Chevrolet Tahoe. Wilson responded that the car he was driving was already sold, but he told Anderson that he could get her a black Tahoe for a $1,000 deposit. Having not seen the vehicle, Anderson only agreed to initially give Wilson $500. Per their agreement, Wilson was to finance the vehicle, and Anderson was to make payments to him to cover the remainder of $14,500, which was the price that Wilson quoted to Anderson. She gave Wilson the $500 down payment on November 15, 2005, for which he gave her a receipt. Shortly thereafter, Wilson told Anderson that he had a fully loaded black Tahoe for her that he would deliver to her in a couple of days.
¶ 3. Over the next few months, Anderson’s repeated calls to Wilson result *10 ed in excuses or appointments at which he failed to show to deliver the Tahoe. In February 2006, Wilson told Anderson that he had instead procured a higher-end model Tahoe for her, but he would need an additional $300 for the down payment. Anderson paid the additional $300, for which she was given another receipt, but Wilson never delivered the second Tahoe to her.
¶ 4. In March 2006, Anderson discovered that Wilson’s phone had been disconnected. When Anderson later got in touch with Wilson at a different phone number, he continued to reassure her that he would deliver the Tahoe. After further excuses, Anderson found Wilson at his parents’ house and demanded that he return her money. He agreed to send her a check, but she never received a refund of any of the $800 down payment.
¶ 5. Finally, in July 2006, Anderson went to the police and filed a complaint against Wilson. Detective David Ruth, of the Brandon Police Department, said he was familiar with Wilson, and the detective questioned both Anderson and Wilson. When Detective Ruth initially investigated the claim, Wilson told him that Anderson owed him some money. Wilson later changed his story and told Detective Ruth that he never received any money from Anderson. Anderson turned over the receipts she had received from Wilson to the police, but Wilson could provide no evidence that he had conveyed title to any vehicle to Anderson. Anderson’s complaint eventually led to Wilson’s arrest.
¶ 6. According to Detective Bo Edging-ton, of the Brandon Police Department, Wilson told him that Anderson initially paid him $300. However, when Detective Edgington presented Wilson with the two receipts for $500 and $300, Wilson did not deny their validity. Wilson also failed to provide Detective Edgington with any evidence that he had purchased a vehicle for Anderson or conveyed the title of a vehicle to her.
¶ 7. In addition to the testimony from Anderson and the police officers, the circuit court allowed the State to introduce the testimony of three witnesses: Tammie Griffin, Chrystal Chambers, and LaTonia Brunston. In allowing the women to testify regarding other acts by Wilson, the circuit court found the following: (1) Wilson’s character was at issue; (2) the evidence was further admissible to prove intent or absence of mistake; and (3) the probative value of the testimony was not outweighed by the danger of unfair prejudice. The women took the stand and testified that Wilson had employed similar tactics to obtain money from them, but he never procured a vehicle for any of them.
¶ 8. Wilson did not testify or present any evidence in his defense. However, he did cross-examine the State’s witnesses, seemingly to explore possible explanations for why he had failed to procure a vehicle for Anderson.
¶ 9. At the close of the trial, the jury returned a verdict finding Wilson guilty of embezzlement. The circuit court then found that Wilson had been previously convicted on two separate incidents for which he had served over a year for each conviction, the first being possession of over a kilogram of cocaine with intent to distribute, and the second being seven counts of embezzlement. The circuit court sentenced Wilson as a habitual offender to the maximum of ten years in the custody of the Mississippi Department of Corrections without eligibility for probation or parole, and the court ordered him to pay a fine of $10,000 along with court costs and $800 in restitution to Anderson.
¶ 10. Wilson filed post-trial motions for a judgment notwithstanding the verdict *11 and for a new trial, which the circuit court denied. Wilson then timely filed the present appeal.
DISCUSSION
I. Whether the indictment charged the essential elements of the crime of embezzlement.
¶ 11. Wilson’s first point of error relates to the indictment charging him with embezzlement. He claims the indictment was fatally defective for failing to include a necessary element of the crime of embezzlement required under the embezzlement statute. According to Wilson, the indictment was defective because it did not charge that the embezzlement was committed by “any director, agent, clerk, servant, or officer of any incorporated company, or [ ] any trustee or factor, carrier or bailee, or any clerk, agent or servant of any private person....”[1]
¶ 12. The State points out that in Wilson’s brief, he mentions that the above-quoted language, from Mississippi Code Annotated section 97-23-19 (Rev.2006), applies to victims. If this is Wilson’s argument, we find that it is without merit because the statutory language clearly specifies categories of perpetrators and not victims. Therefore, the charging indictment did not need to allege that Anderson fell into one of those two categories. However, we further find the indictment to be proper in the event that Wilson’s argument is that the indictment needed to allege that he, as the perpetrator, fell into one of the two categories.
¶ 13. The indictment for embezzlement returned against Wilson charged that:
Earnest Lee Wilson, Jr. ... did willfully, unlawfully, [and] feloniously take, and convert to his own use U.S. currency, valued in excess of five hundred dollars ($500.00), the personal property of Melo-ny Anderson, which had been entrusted to his care by virtue of his employment, in violation of Mississippi Code Annotated § 97-23-19(1972)....
¶ 14. Wilson is correct that the indictment does not contain the exact language from the statute; however, it did charge that Anderson entrusted him with her money. It further alleged that Anderson employed Wilson, which was the reason that she entrusted him with the money. This language is more than sufficient to satisfy the language of section 97-23-19, which Wilson claims was absent from the indictment. Rule 7.06 of the Uniform Rules of Circuit and County Court provides, in part, the following regarding indictments:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.
An indictment that “reasonably provides the accused with actual notice and ... complies with Rule 7.06 of the Uniform [Rules of] Circuit and County Court” is sufficient to charge the defendant with the crime. Turner v. State, 864 So.2d 288, 293(¶ 22) (Miss.Ct.App.2003); see also McNeal v. State, 658 So.2d 1345, 1350 (Miss.1995).
*12 ¶ 15. We find that the indictment charging Wilson with embezzlement sufficiently provided notice of the essential elements of the crime of embezzlement. In addition, the indictment cited to the statute proscribing embezzlement. Accordingly, we find that the indictment was proper and that this issue is without merit.
II. Whether thé State’s witnesses testified in violation of Rules 403 and 404(b) of the Mississippi Rules of Evidence.
¶ 16. Wilson next argues that the circuit court erred in allowing the testimony of Griffin, Chambers, and Bruriston, who testified that they gave Wilson money with the understanding that he would procure a vehicle for them. He argues that the witnesses’ testimonies should have been excluded as prior bad acts under Rule 404(b) of the Mississippi Rules of Evidence. Should this Court find that the circuit court was not in error in that Rule 404(b) did not serve to exclude the women’s testimonies, Wilson alternatively argues that, pursuant to Rule 403 of the Mississippi Rules of Evidence, the circuit court should have excluded their testimonies because the prejudicial effect outweighed any probative value that it had.
¶ 17. According to Rule 402 of the Mississippi Rules of Evidence, for evidence to be admissible it must be relevant. “The admissibility and relevancy of the evidence are within the discretion of the trial court and, absent an abuse of that discretion, the trial court’s decision will not be disturbed on appeal.” McCoy v. State, 820 So.2d 25, 31(¶ 15) (Miss.Ct.App.2002) (citing Reynolds v. State, 784 So.2d 929, 932(¶ 7) (Miss. 2001)). Nevertheless, even if an admission of evidence was in error, it is not cause for reversal unless it results in prejudice or harm. Id. (citing Jackson v. State, 594 So.2d 20, 25 (Miss.1992)).

A. Rule I0J(b)

¶ 18. In the present case, the three witnesses about which Wilson complains testified that he made similar promises to procure vehicles at auction for them and that they gave him deposits for the vehicles. Following an objection from Wilson’s legal advisor[2] and a discussion of the issue among the judge, the prosecutor, and Wilson’s legal advisor, the circuit court ruled as follows:
I believe character is an issue in this case. And the way I read 404(b) in the comment that I made reference to, and the State’s attempt, this is something that would be admissible for the showing of intent or absence of mistake. And I think that that has been brought into issue. And considering that I do not find that the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or any of the other things under the rule regarding delay, waste of time[,] or cumulative. So based .on the narratives that [are] in the State’s disclosure filed in the court file, those witnesses will be allowed to testify as to those matters.
¶ 19. While Rule 404(b) generally provides that evidence “of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith,” it excepts from the exclusion those instances in which the evidence is offered to show, among other things, intent or absence of mistake or accident. See also Jones v. State, 904 So.2d 149, 152(¶ 6) (Miss.2005); *13 Simmons v. State, 813 So.2d 710, 716(¶ 30) (Miss.2002). The State presented the testimonies of the three witnesses as evidence of Wilson’s intent and to show that it was not a mistake or accident that he took Anderson’s money but never gave her the promised vehicle.
¶ 20. The record reveals that there was ample reason for the State to introduce evidence of Wilson’s intent and the lack of any mistake or accident on Wilson’s part. On cross-examination of the State’s witnesses, one of Wilson’s lines of questioning' related to whether it was possible that Anderson had been unable to come up with the necessary payments. A related line of questioning that Wilson explored dealt with his liability for alleged restocking fees with the automobile auctioneers because of his inability to obtain payments from Anderson. While conducting cross-examination, Wilson also insinuated that he had been busy with his sick family members, and because of that, he had been unable to deliver the vehicle to Anderson. These were defenses that brought into question whether Wilson had any intent to embezzle money from Anderson or whether it was just a misunderstanding between the two of them. Accordingly, to rebut Wilson’s allegations that he had no intent to take Anderson’s money and that it was only a mistake that she had not yet received the promised vehicle, we find that it was proper for the circuit court to allow the testimony of Griffin, Chambers, and Brunston under the exception to Rule 404(b).

B. Rule í03

¶21. Finding that the circuit court properly admitted the witnesses’ testimonies under Rule 404(b), we now turn our attention to Wilson’s claim that the circuit court should have excluded the testimonies under Rule 403 as being more prejudicial than probative. In addressing a circuit court’s failure to make an on-the-record Rule 403 balancing test, the supreme court has said that:
[W]hile we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be “filtered” through the balancing test set forth in Rule 403, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this Court certainly expects trial judges to have considered Rule 403 in making their evi-dentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words.... [0]ur review depends on the evidence and not the judge, and while a judge’s on-the-record analysis is recommended as it serves to fortify the judge’s position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.
Jones v. State, 920 So.2d 465, 476(¶ 34) (Miss.2006). In the present case, the circuit court did not specifically state the factors it took into account in deciding whether to allow the witnesses’ testimonies. However, prior to allowing the witnesses to testify, the circuit court heard arguments on the issue from the prosecution and from Wilson’s legal advisor. After the circuit court was apprised of each witness’s testimony and its possible prejudicial effect, he found that the probative value outweighed any possible prejudicial effect.
¶ 22. While the circuit court did not provide an on-the-record Rule 403 analysis, the court did hear arguments concerning the issue from both sides. From that, the circuit court ultimately found that allowing the witnesses to testify outweighed any prejudicial effect. We find no error *14 with the circuit court’s finding and its decision to allow the witnesses to testify.
¶23. Furthermore, the circuit court gave a proper limiting instruction regarding the witnesses’ testimonies, explaining in jury instruction number seven that:
The Court instructs the jury that acts testified to by LaTonia Brunston, Crystal Chambers!,] and Tammie Griffin are acts relating to charges for which the defendant is not presently on trial and are to be considered only for the limited purpose of showing intent or absence of mistake or accident. You cannot and must not simply infer that the Defendant acted in conformity with his previous acts and that he is therefore guilty of the charge for which he is presently on trial.
“[T]he law presumes the jury is competent and follows the instructions they are given.” Curry v. State, 939 So.2d 785, 790(¶ 17) (Miss.2006) (citing Shoemaker v. State, 502 So.2d 1193, 1195 (Miss.1987)). Wilson presented no evidence to rebut this presumption or to suggest that the jury did not follow the given instruction informing them that the witnesses’ testimonies were solely to be considered for the purpose of showing intent or lack of mistake or accident in embezzling from Anderson.
¶24. We find that the circuit court properly allowed Griffin, Chambers, and Brunston to testify concerning Wilson’s prior acts. We also find that their testimonies were not so prejudicial as to outweigh the probative value. Accordingly, we affirm the circuit court’s admission of their testimonies. This issue is without merit.
III. Whether the circuit court’s questioning of Wilson during the sentencing phase of the trial violated Wilson’s right against self-incrimination and his right to due process.
¶25. Wilson’s next point of error relates to the sentencing phase of his trial. It is Wilson’s contention that because he had previously elected not to testify, the circuit court violated Wilson’s right against self-incrimination and his right to due process by questioning Wilson prior to sentencing him.
¶ 26. We first note that Wilson did not object to the circuit court’s questions during his sentencing hearing. The Fifth Amendment privilege against self-incrimination remains in effect at sentencing. Holland v. State, 705 So.2d 307, 332-33(1175) (Miss.1997) (citing Estelle v. Smith, 451 U.S. 454, 462-63, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)). However,, failure to make a timely objection at trial will bar such an issue from review on appeal. Howell v. State, 800 So.2d 556, 560(¶ 15) (Miss.2001) (citing Crenshaw v. State, 520 So.2d 131, 134 (Miss.1988)). The circuit court previously instructed Wilson that he had a right to remain silent and that no one could force him to testify. Notwithstanding the circuit court’s instructions, during sentencing, Wilson readily answered each of the court’s questions without objection. Therefore, we find that this issue is procedurally barred from review.
¶ 27. While this issue is ultimately procedurally barred, we alternatively find that Wilson’s claim that the circuit court’s decision to impose the maximum sentence was discretionary and that the questioning resulted in Wilson receiving the maximum ten-year sentence is wholly without merit. Wilson ignores that at the time the circuit court questioned him, the State had already presented evidence that he was a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). Because the State proved that Wilson was a habitual offend *15 er, section 99-19-81 required the circuit court to impose the maximum sentence.[3]
¶ 28. In this case, the maximum sentence for embezzlement was ten years. Absent a showing that this sentence was disproportionate to Wilson’s crime, the ten-year sentence Wilson received was statutorily mandated. Wilson’s claims regarding his sentencing hearing are procedurally barred because he made no contemporaneous objection at trial. This issue is also without merit.
IV. Whether it was error for the circuit court to deny Wilson’s motion for a directed verdict, his motion for a judgment notwithstanding the verdict, and his motion for a new trial.
¶29. Lastly, Wilson argues that the circuit court erred in denying his motion for a directed verdict, his motion for a judgment notwithstanding the verdict, and his motion for a new trial. He bases his argument on his prior allegation that the indictment failed to charge a necessary element of embezzlement. According to Wilson, because the State did not charge a necessary element of embezzlement, it could not prove all the necessary elements of the crime. He argues that it follows that the evidence was insufficient to support his conviction, and his conviction was against the overwhelming weight of the evidence.

A. Sufficiency of the Evidence

¶ 30. Our standard of review regarding a circuit court’s ruling on post-trial motions is abuse of discretion. Smith v. State, 925 So.2d 825, 830(¶ 10) (Miss.2006). Review of a motion for a directed verdict or a judgment notwithstanding the verdict tests the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(1116) (Miss. 2005) (citing Carr v. State, 208 So.2d 886, 889 (Miss.1968)). The court must ask whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Id. (quoting Carr, 208 So.2d at 889). Taking the evidence in the light most favorable to the prosecution, the question is whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Id. (citing Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 31. “Embezzlement is the wrongful conversion of property lawfully possessed by the person charged.” Montgomery v. State, 891 So.2d 179, 186(¶30) (Miss.2004) (citing Medley v. State, 600 So.2d 957, 960 (Miss.1992)). In Champluvier v. State, 942 So.2d 145, 151(¶ 11) (Miss.2006) (quoting May v. State, 240 Miss. 361, 363, 127 So.2d 423, 425 (1961)), the supreme court restated the elements of embezzlement:
The constituent elements of the offense are (1) an agent or trustee of a private person, (2) embezzling or converting to his own use, (3) rights in action, money, or other valuable security, effects or property of any kind, (4) which have been intrusted to his care or possession by virtue of his position or employment.
*16 Depending on the facts of the case, the first element should read “ ‘a director, agent, clerk, servant, or officer of any incorporated company’ had embezzled, or that ‘any trustee or factor, carrier or bail-ee, or any clerk, agent or servant of any private person’ had embezzled,” Id.
¶ 32. In the present case, the State presented the testimony of Anderson who said that she hired Wilson to procure a black Tahoe for her from an automobile auction. Per their agreement, Anderson paid Wilson the amounts of $500 and $300 as a down payment for a vehicle, as reflected by the two receipts in evidence. The testimony revealed that she repeatedly called Wilson and attempted to meet him to pick up the truck, but he never fulfilled his end of the agreement by procuring a truck for her. Wilson also never repaid Anderson any of the amount entrusted to him as a down payment.
¶ 33. We have already found that Wilson’s argument concerning his indictment is without merit. The State charged him with each of the necessary elements of embezzlement, and as shown, the State put on evidence regarding each of those necessary elements. From the testimony and the evidence presented, we find that the State presented sufficient evidence to allow the jury to find each of the necessary elements of the crime of embezzlement. Therefore, the circuit court properly denied Wilson’s motion for a directed verdict and his motion for a judgment notwithstanding the verdict.

B. Weight of the Evidence

¶ 34. In reviewing a motion for a new trial, the question is whether the jury verdict was against the overwhelming weight of the evidence. Bush, 895 So.2d at 844(¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). We must weigh the evidence in the light most favorable to the verdict, and only when a verdict is so contrary to the overwhelming weight of the evidence that it creates an unconscionable injustice will we reverse. Id. The motion “is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)).
¶ 35. Regarding the weight of the evidence, Wilson did not take the stand to offer his version of the story. After the State rested its case, the defense rested without presenting any witnesses or evidence. Wilson did cross-examine the State’s witnesses in an attempt to impeach them and seemingly to bring his intent into question. However, based on the evidence in the record, we cannot say that the verdict was contrary to the overwhelming weight of the evidence. We find that the evidence produced at trial supported the verdict, and we find no 'error with the circuit court’s denial of Wilson’s motion for a new trial.
¶ 36. We find that Wilson’s allegations that the circuit court erred in denying his post-trial motions are without merit.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF EMBEZZLEMENT AND SENTENCE AS A HABITUAL OFFENDER OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE AND TO PAY A FINE OF $10,000 AND $800 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*17 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.

. A 2007 amendment to Mississippi Code Annotated section 97-23-19 (Supp.2007) removed this very language and replaced it with "any person.” However, the indictment charging Wilson alleged that the crime occurred between November 2005 and February 2006; therefore, the language cited by Wilson was part of the statute at the time.

. Wilson had been appointed an attorney, but he chose to represent himself. The circuit court ordered that Wilson’s appointed attorney would serve as a legal advisor to assist him during the trial.

. A circuit court may impose a lesser sentence on a habitual offender if the court conducts a comparison of the crime to the sentence and finds that an inference of gross disproportionality exists. Pool v. State, 724 So.2d 1044, 1049-50 (¶¶ 28-31) (Miss.Ct.App. 1998). However, Wilson has not alleged that his sentence was disproportionate to the crime he committed, nor do we find that his ten-year sentence was disproportionate in relation to his conviction for embezzlement. Accordingly, no proportionality analysis is required.